# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACKY DEMOSTHENE and LAQUITA JONES, on behalf of themselves and others similarly situated, | ) CASE NO.<br>)<br>) JUDGE<br>) |
| Plaintiffs, | ) |
| vs. | ) **CLASS AND COLLECTIVE ACTION**<br>) **COMPLAINT** |
| ROSINA FOOD PRODUCTS, INC., | ) **JURY DEMAND ENDORSED HEREON** |
| Defendant. | ) |

Plaintiffs Jacky Demosthene and Laquita Jones ("Plaintiffs"), on behalf of themselves and all others similarly situated, for their Complaint against Defendant Rosina Food Products, Inc. ("Defendant"), states and alleges as follows:

## NATURE OF COMPLAINT

1. This case challenges policies and practices of Defendant that violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and N.Y. Lab. Law § 190, *et seq*. ("NYLL").

2. Plaintiff Jones brings this case as an FLSA "collective action" pursuant to 29 U.S.C. §216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." Plaintiff Jones brings this case on behalf of herself and other "similarly situated" persons who may join this case pursuant to §216(b) (the "Opt-Ins").

3. Plaintiffs also bring this claim as a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of the NYLL on behalf of other employees employed by Defendant in New York.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff Jones' FLSA claim pursuant to 28 U.S.C. §1331 and 29 U.S.C. § 216(b).

5. The Court has supplemental jurisdiction over the asserted New York state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the FLSA claims as to form part of the same case or controversy.

6. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district and division.

## PARTIES

7. Plaintiffs are citizens of the United States and the State of New York.

8. Within the three years preceding the filing of this Action, Plaintiff Jones was employed by Defendant as a non-exempt employee who was paid on an hourly basis.

9. Within the six years preceding the filing of this Action, Plaintiff Demosthene was employed by Defendant as a non-exempt employee who was paid on an hourly basis.

10. At all relevant times, Plaintiff were each an "employee" within the meaning of 29 U.S.C. § 203(e) and N.Y. Lab. Law § 190.

11. Defendant, Rosina Food Products, Inc., is a New York corporation with a principal place of business at 170 French Road, Cheektowaga, NY 14227.

12. At all relevant times, Defendant was an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law § 190.

13. At all relevant times, Defendant was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1).

14. At all relevant times, Plaintiffs were each an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

15. Plaintiff Jones' written Consent to Join this Action is attached hereto as Exhibit A.

## STATEMENT OF CLAIM

<u>Defendant's Failure to Compensate Plaintiffs and Other Similarly Situated Employees For Time Spent Donning and Doffing.</u>

16. Defendant manufactures, packages, distributes, and sells food products at its facility in New York.

17. Plaintiffs and other similarly situated employees were production workers in Defendant's food production facility within the last six years.

18. Although they may have had different job titles and some different job duties, the common element amongst Plaintiffs and other similarly situated employees were that they were all involved in the manufacturing, packaging, and handling of food, and their job duties required them to come into contact with food, food-contact surfaces, or food packaging.

19. Plaintiffs and other similarly situated employees, as workers in a food production facility, were required to wear certain personal protective equipment ("PPE") such as a hard hat, hearing protection, and safety glasses.

20. The purpose of wearing PPE was to help protect Plaintiffs and other similarly situated employees from injury.

3

21. Plaintiffs and other similarly situated employees, as workers in a food production facility, were also required to wear certain Sanitary Clothing ("Sanitary Clothing"), such as a hairnet, gloves, and a lab coat or sanitary smock.

22. Unlike PPE, the Sanitary Clothing offered Plaintiffs and other similarly situated employees no protection from injury. Indeed, wearing the Sanitary Clothing offered Plaintiffs and other similarly situated employees no benefit whatsoever.

23. Rather, the only reason Plaintiffs and other similarly situated employees wore Sanitary Clothing while working was because of the unique nature of the job duties they were performing – the processing, manufacturing, and packaging of food products for human consumption.

24. Put another way, Plaintiffs and other similarly situated employees wore PPE for their own protection, but wore Sanitary Clothing to protect the products Defendant was manufacturing.

25. For example, if Plaintiffs and other similarly situated employees did not wear Sanitary Clothing while working, Defendant would run the risk that contaminants, such as hair, lint, dirt, or bodily fluids, could enter the food that Defendant sells to its customers. Having Plaintiffs and other similarly situated employees wear Sanitary Clothing mitigates that risk.

26. Requiring Plaintiffs and other similarly situated employees to wear Sanitary Clothing while working also helps prevent the spread of foodborne illness and disease.

27. According to the U.S. Department of Agriculture Food Safety and Inspection Service, foodborne illness comes from eating contaminated food, and it causes an estimated 48 million illnesses and 3,000 deaths each year in the United States.[1]

---

[1] See https://www.fsis.usda.gov/food-safety/foodborne-illness-and-disease (last accessed March 11, 2024).

28. Not only is it a good business practice for Defendant to require Plaintiffs and other similarly situated employees to wear Sanitary Clothing while working, it is also a legal requirement.

29. As a manufacturer of food products, Defendant is regulated by the U.S. Food and Drug Administration ("FDA"), and is subject to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §9, et seq. (hereinafter "FDCA").

30. In enforcing the FDCA, the FDA promulgates Good Manufacturing Practices ("GMPs") for the manufacturing, packing, or holding of human food, set forth in 21 C.F.R. § 110, with which Defendant is required by law to comply.

31. The GMPs have a section dedicated to personnel, which specifically requires that "[a]ll persons working in direct contact with food, food-contact surfaces, and food-packaging materials shall conform to hygienic practices while on duty to the extent necessary to protect against contamination of food." 21 C.F.R. § 110.10(b) (emphasis added). These practices include, but are not limited to:

> (1) Wearing outer garments suitable to the operation in a manner that protects against the contamination of food, food-contact surfaces, or food-packaging materials.
>
> (2) Maintaining adequate personal cleanliness.
>
> (3) Washing hands thoroughly (and sanitizing if necessary to protect against contamination with undesirable microorganisms) in an adequate hand-washing facility before starting work, after each absence from the work station, and at any other time when the hands may have become soiled or contaminated.
>
> (4) Removing all unsecured jewelry and other objects that might fall into food, equipment, or containers, and removing hand jewelry that cannot be adequately sanitized during periods in which food is manipulated by hand. If such hand jewelry cannot be removed, it may be covered by material which can be maintained in an intact, clean, and sanitary condition and which effectively protects against the contamination by these objects of the food, food-contact surfaces, or food-packaging materials.

(5) Maintaining gloves, if they are used in food handling, in an intact, clean, and sanitary condition. The gloves should be of an impermeable material.

(6) Wearing, where appropriate, in an effective manner, hair nets, headbands, caps, beard covers, or other effective hair restraints.

(7) Storing clothing or other personal belongings in areas other than where food is exposed or where equipment or utensils are washed.

(8) Confining the following to areas other than where food may be exposed or where equipment or utensils are washed: eating food, chewing gum, drinking beverages, or using tobacco.

(9) Taking any other necessary precautions to protect against contamination of food, food-contact surfaces, or food-packaging materials with microorganisms or foreign substances including, but not limited to, perspiration, hair, cosmetics, tobacco, chemicals, and medicines applied to the skin.

32. Notably, "[r]esponsibility for assuring compliance by all personnel with all requirements of this part shall be clearly assigned to competent supervisory personnel." 21 C.F.R. §110.10(d).

33. The FDCA prohibits the adulteration of food, and the introduction or delivery for introduction into interstate commerce of any adulterated food. 21 U.S.C. § 331.

34. Food is considered adulterated "if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health[.]" 21 U.S.C. § 342(a)(4).

35. Any person who violates 21 U.S.C. § 331 "shall be imprisoned for not more than one year or fined not more than $1,000, or both." 21 U.S.C. § 333(a)(1).

36. In determining whether food is adulterated, the FDA applies the criteria and definitions set forth in the GMPs. 21 C.F.R. § 110.5(a).

37. Consequently, if Defendant's employees did not follow the GMPs set forth in 21 C.F.R. § 110.10(b), they could be held criminally liable under 21 U.S.C. § 333(a)(1).

38. It would be impossible for Plaintiffs and those similarly situated, who were engaged in the manufacturing, packaging, and handling of food products, to perform their work duties unless they wore Sanitary Clothing that complies with the FDCA, helps prevent the spread of foodborne illness, and protects Defendant's interest in selling food products to the general public that are free from contaminants.

39. Defendant does not want to provide the public adulterated food.

40. Adulterated food can cause illness and even death.

41. Defendant does not want its food products to cause illness or death.

42. Defendant has GMPs in place to prevent the adulteration of food.

43. Among those GMPs is the requirement that those working in direct contact with food, food-contact surfaces, and food-packaging materials wear Sanitary Clothing.

44. If those working in direct contact with food, food-contact surfaces, and food-packaging materials did not wear Sanitary Clothing it is possible for food to become adulterated.

45. Defendant does not want to take the risk that the food products it provides to the public are adulterated and that is all or part of the reason it requires its employees to wear Sanitary Clothing.

46. Defendant would refuse to allow its food production employees to perform their job duties unless they wore Sanitary Clothing.

47. As a result of the foregoing reasons, wearing Sanitary Clothing is integral and indispensable to the work Plaintiffs and other similarly situated employees of Defendant perform.

48. Wearing Sanitary Clothing is an intrinsic element of the work Plaintiffs and other similarly situated employees of Defendant perform, and one in which they cannot dispense if they are to perform their principal activities.

49. Wearing Sanitary Clothing is a component of the work Plaintiffs and other similarly situated employees are hired to do.

50. Unless Plaintiffs and other similarly situated employees wore Sanitary Clothing, they cannot complete their work.

51. Therefore, the donning and doffing of Sanitary Clothing is integral and indispensable to the work performed by Plaintiffs and other similarly situated employees of Defendant.

52. Because the donning and doffing of Sanitary Clothing is integral and indispensable to the work performed by Plaintiffs and other similarly situated employees of Defendant, the time spent donning and doffing Sanitary Clothing is compensable work time within the meaning of the FLSA and NYLL.

53. The donning of Sanitary Clothing by Plaintiffs and other similarly situated employees is those employees' first principal activity of the day.

54. The doffing of Sanitary Clothing by Plaintiffs and other similarly situated employees is those employees' last principal activity of the day.

55. Pursuant to the "Continuous Workday Rule," Plaintiffs and other similarly situated employees should have been compensated for all time spent from their first principal activity of the day to their last principal activity of the day, other than bona fide meal breaks.

56. Within the last six years, Defendant required Plaintiffs and other similarly situated employees to don Sanitary Clothing at Defendant's facility, but prior to the start of their scheduled shift. Plaintiffs and other similarly situated employees were not paid for this time.

57. After the end of their scheduled shift, Plaintiffs and other similarly situated employees were required to doff their Sanitary Clothing at Defendant's facility. Plaintiffs and other similarly situated employees were not paid for this time.

58. Plaintiffs and other similarly situated employees, as full-time employees, regularly worked 40 or more hours in a workweek in the six years preceding the filing of this Action, including donning and doffing time and associated travel and wait time.

59. Plaintiffs and other similarly situated employees were not paid for all of the time spent donning and doffing their Sanitary Clothing, or for associated travel and wait time.

60. As a result of Plaintiffs and other similarly situated employees not being paid for all hours worked, Plaintiffs and other similarly situated employees were not paid overtime compensation for all of the hours they worked in excess of 40 each workweek.

61. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA and NYLL.

<u>Defendant's Unlawful Time Rounding Policy</u>

62. Defendant also maintains an unlawful time clock rounding policy or practice (the "Rounding Policy").

63. Within the last six years, Plaintiffs and other similarly situated employees were subject to Defendant's Rounding Policy.

64. Defendant's timekeeping system captures the exact time Plaintiffs and other similarly situated employees clocked in and out for work.

65. Defendant's timekeeping system also calculates the hours Plaintiffs and other similarly situated employees worked from the time they clocked in to the time they clocked out of work. This calculation is referred to as the "Raw Total" in Defendant's timekeeping system.

66. Defendant's timekeeping system also calculates the hours Plaintiffs and other similarly situated employees worked from the time they clocked in to the time they clocked out of work. This calculation is referred to as the "Raw Total" in Defendant's timekeeping system.

67. Although Defendant's timekeeping system calculates the hours Plaintiffs and other similarly situated employees worked from the time they clocked in to the time they clocked out of work, Defendant did not pay Plaintiffs and other similarly situated employees the "Raw Total" hours worked.

68. Instead, Defendants utilized its Rounding Policy to round off, in its favor, the time Plaintiffs and other similarly situated employees worked to a number that was less than the "Raw Total" hours worked. This calculation is referred to as the "Calc. Total" in Defendant's timekeeping system.

69. Defendant compensates Plaintiffs and other similarly situated employees based on their "Calc. Total," rather than their "Raw Total"

70. The net effect of Defendant's Rounding Policy is that it is used in such a manner that, over a period of time, it results in failure to compensate Plaintiffs and other similarly situated employees properly for all the time they have actually worked.

71. Plaintiffs and other similarly situated employees, as full-time employees, regularly worked 40 or more hours in a workweek in the six years preceding the filing of this Action.

72. As a result of Defendant's Rounding Policy Plaintiffs and other similarly situated employees were not paid for all of the hours they actually worked.

73. As a result of Plaintiffs and other similarly situated employees not being paid for all hours worked, Plaintiffs and other similarly situated employees were not paid overtime compensation for all of the hours they worked in excess of 40 each workweek.

74. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA and NYLL.

## COLLECTIVE ACTION ALLEGATIONS

75. Plaintiff Jones brings this action on her own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other similarly situated persons who have been, are being, or will be, adversely affected by Defendant's unlawful conduct.

76. The class that Plaintiff seeks to represent and for whom Plaintiff Jones seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff Jones is herself a member, is composed of and defined as follows:

> **All current and former hourly production employees of Rosina Food Products, Inc. who were involved in the manufacturing, packaging, or handling of food or food products and who worked 40 or more hours in a workweek at any time from three (3) years preceding the date of filling of this Complaint through the final disposition of this matter**.

77. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiff Jones, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff Jones is representative of those other employees and is acting on behalf of their interests as well as her own in bringing this action.

78. These similarly situated employees are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

## NEW YORK CLASS ACTION ALLEGATIONS

79. Plaintiffs also bring this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of themselves and a class of persons, defined as:

> **All current and former hourly production employees of Rosina Food Products, Inc. in New York who were involved in the manufacturing, packaging, or handling of food or food products and who worked 40 or more hours in a workweek at any time from six (6) years preceding the date of filling of this Complaint through the final disposition of this matter.**

80. The Class is so numerous that joinder of all class members is impracticable. Plaintiffs are unable to state the exact size of the potential Class but, upon information and belief, aver that it consists of at least 500 people.

81. There are questions of law or fact common to the Class including: whether Defendant failed to pay its employees for donning and doffing time, whether Defendant's time rounding policy led to a failure to compensate its employees properly for all the time they actually worked, and whether these actions resulted in the underpayment of overtime.

82. Plaintiffs will adequately protect the interests of the Class. Their interests are not antagonistic to but, rather, are in unison with, the interests of the Class members. Plaintiffs' counsel has broad experience in handling class action wage-and-hour litigation, and are fully qualified to prosecute the claims of the Class in this case.

83. The questions of law or fact that are common to the Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the New York Class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

84. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Overtime Violations – Donning and Doffing)

85. Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

86. Defendant failed to compensate Plaintiff Jones and other similarly situated employees for time spent donning and doffing their sanitary clothing or for associated travel and wait time.

87. Defendant failed to count time Plaintiff Jones and other similarly situated employees spent donning and doffing their sanitary clothing, or for associated travel and wait time, as "hours worked" under the FLSA.

88. Plaintiff Jones and other similarly situated employees regularly worked 40 or more hours per workweek for Defendant.

89. Defendant's practice and policy of not paying Plaintiff Jones and other similarly situated employees for time spent donning and doffing their sanitary clothing or for associated travel and wait time resulted in Defendant's failure to pay Plaintiff Jones and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

90. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the FLSA.

91. As a result of Defendant's practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## COUNT TWO
### (FLSA Overtime Violations – Rounding)

92. Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

93. Defendant's timekeeping system utilizes unlawful rounding policies or practices that regularly rounds the hours Plaintiffs and other similarly situated employees worked for Defendant in Defendant's favor.

94. Defendant's rounding policies and practices are used in such a manner that, over a period of time, they result in failure to compensate Plaintiffs and other similarly situated employees properly for all the time they have actually worked.

95. Plaintiffs and other similarly situated employees regularly worked 40 or more hours per workweek for Defendant.

96. Defendant's rounding policies and procedures resulted in Defendant's failure to pay Plaintiffs and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

97. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the FLSA.

98. As a result of Defendant's practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## COUNT THREE
### (New York Labor Law Overtime Violations – Donning and Doffing)

99. Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

100. Defendant failed to compensate Plaintiff Jones and other similarly situated employees for time spent donning and doffing their sanitary clothing or for associated travel and wait time.

101. Defendant failed to count time Plaintiff Jones and other similarly situated employees spent donning and doffing their sanitary clothing, or for associated travel and wait time, as "hours worked" under the NYLL.

102. Plaintiff Jones and other similarly situated employees regularly worked 40 or more hours per workweek for Defendant.

103. Defendant's practice and policy of not paying Plaintiff Jones and other similarly situated employees for time spent donning and doffing their sanitary clothing or for associated travel and wait time resulted in Defendant's failure to pay Plaintiff Jones and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek, in violation of NYLL.

104. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of NYLL.

105. As a result of Defendant's practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to NYLL.

## COUNT FOUR
### (New York Labor Law Overtime Violations – Rounding)

106. Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

107. Defendant's timekeeping system utilizes unlawful rounding policies or practices that regularly rounds the hours Plaintiffs and other similarly situated employees worked for Defendant in Defendant's favor.

108. Defendant's rounding policies and practices are used in such a manner that, over a period of time, they result in failure to compensate Plaintiffs and other similarly situated employees properly for all the time they have actually worked.

109. Plaintiffs and other similarly situated employees regularly worked 40 or more hours per workweek for Defendant.

110. Defendant's rounding policies and procedures resulted in Defendant's failure to pay Plaintiffs and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek, in violation of NYLL.

111. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of NYLL.

112. As a result of Defendant's practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to NYLL.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all persons similarly situated, pray that this Honorable Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly situated persons informing them of this action and enabling them to opt-in;

B. Enter judgment against Defendant and in favor of Plaintiffs, the Class, and the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b);

C. Award Plaintiff and the putative class actual damages for unpaid wages;

D. Award Plaintiff and the putative class liquidated damages equal in an amount equal to the unpaid wages found due to Plaintiffs and the putative class;

E. Award Plaintiff and the putative class pre-judgment and post-judgment interest at the statutory rate;

F. Award Plaintiff and the putative class attorneys' fees, costs, and disbursements; and

G. Award Plaintiff and the putative class further and additional relief as this Court deems just and proper.

Respectfully Submitted,

**NILGES DRAHER LLC**

*/s/ Hans A. Nilges*
Hans A. Nilges (OH No. 0076017)
7034 Braucher St., N.W., Suite B
North Canton, OH 44720
Telephone:	330-470-4428
Facsimile:	330-754-1430
Email: hans@ohlaborlaw.com

*Counsel for Plaintiff*

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims so triable.

*/s/ Hans A. Nilges*
Counsel for Plaintiff