UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACKY DEMOSTHENE and LAQUITA JONES, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROSINA FOOD PRODUCTS, INC.,<br><br>Defendant. | Case No. 1:24-cv-00225-JLS-MJR |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED AS A COLLECTIVE ACTION UNDER THE FLSA**

BARCLAY DAMON LLP
*Attorneys for Defendant Rosina Food Products, Inc.*
Arianna E. Kwiatkowski, Esq.
200 Delaware Avenue, Suite 1200
Buffalo, NY 14202
Telephone: 716-858-3869
Facsimile: 716-566-4009
Email: akwiatkowski@barclaydamon.com

i

**Table of Contents**

Table of Contents ........................................................................................................................... i
Table of Authorities ..................................................................................................................... ii
I.   PRELIMINARY STATEMENT ......................................................................................... 1
II.  PROCEDURAL HISTORY AND THE PARTIES ............................................................. 2
     A.  Procedural History ........................................................................................................ 2
     B.  Rosina Food Products, Inc. ........................................................................................... 2
     C.  Plaintiffs and Opt-in Plaintiffs ...................................................................................... 4
III. LEGAL STANDARD FOR CONDITIONAL CERTIFICATION ...................................... 5
IV.  ARGUMENT ....................................................................................................................... 7
     A.  Plaintiffs Have Failed to Demonstrate that the Putative Collective is Similarly Situated ... 7
          1.  Plaintiffs' Claims Require Individualized Inquiries .................................................... 7
          2.  Non-Integral Activities and the De Miniums Doctrine ............................................... 8
     B.  Any Ruling on The Proposed Notice Should Be Deferred .......................................... 11
     C.  The Proposed Notice Requires Modification .............................................................. 12
          1.  The Putative Collective Group for Notice Should Be At Most Three Years Prior to the Date of Any Order ............................................................................................. 12
          2.  The Scope of the Proposed Notice is Overly Broad ................................................. 13
          3.  Defense Counsel's Contact Information Should Be Included on the Notice ............ 13
CONCLUSION ............................................................................................................................ 14

## Table of Authorities

**Page(s)**

**Cases**

Adams v. Bloomberg L.P.,
 No. 20-cv-7724 (RA)(JLC), 2023 U.S. Dist. LEXIS 23757 (S.D.N.Y. Feb. 13, 2023)............9

Albrecht v. Wackenhut Corp.,
 No. 07-cv-6162, 2009 U.S. Dist. LEXIS 88073 (W.D.N.Y. Sep. 24, 2009) ..........................11

Andujar v. SKYC Mgmt. LLC,
 No. 23-cv-8764(MKV), 2024 U.S. Dist. LEXIS 209188 (S.D.N.Y. Nov. 15, 2024)..............14

Costello v. Kohl's Illinois, Inc.,
 No. 13-cv-1359, 2014 U.S. Dist. LEXIS 124376 (S.D.N.Y. Sept. 4, 2014) ..........................11

Flood v. Carlson Rests., Inc.,
 14-civ-2740(AT), 2015 U.S. Dist. LEXIS 6608 (S.D.N.Y. Jan. 20, 2015) ............................11

Flores v. Osaka Health Spa, Inc.,
 No. 05-cv-962(JSR), 2006 U.S. Dist. LEXIS 11378 (S.D.N.Y. Mar. 16, 2006).......................5

Fraticelli v. MSG Holdings, L.P.,
 No. 13-cv-6518(JMF), 2014 U.S. Dist. LEXIS 63167 (S.D.N.Y. May 7, 2014) ......................5

Gorman v. Consolidated Edison Corporation,
 488 F.3d 586 (2d Cir. 2007).................................................................................................9, 10

Grande v. 48 Rockefeller Corp.,
 No. 21-cv-1593 (PGG)(JLC), 2023 U.S. Dist. LEXIS 140490 (S.D.N.Y. Aug. 11, 2023).......9

Haight v. Wackenhut Corp.,
 692 F. Supp. 2d 339 (S.D.N.Y. 2010)......................................................................................10

Han v. Madison Ave. Realties, LLC,
 No. 24-cv-04658(LJL), 2022 U.S. Dist. LEXIS 120849 (S.D.N.Y. July 8, 2022)....................5

Hanming Feng v. Soy Sauce LLC,
 No. 15-cv-3058(ENV)(LB), 2016 U.S. Dist. LEXIS 32820 (E.D.N.Y. Mar. 14, 2016)...........8

Holick v. Cellular Sales of N.Y., LLC,
 No. 12-cv-584(NAM/DJS), 2019 U.S. Dist. LEXIS 70399 (N.D.N.Y. Apr. 26, 2019)............6

Imbarrato v. Banta Mgmt. Servs., Inc.,
 No. 18-cv-5422(NSR), 2022 U.S. Dist. LEXIS 75179 (S.D.N.Y. Apr. 25, 2022)....................5

Mark v. Gawker Media LLC,
   No. 13-cv-4347(AJN), 2014 U.S. Dist. LEXIS 114011 (S.D.N.Y. Aug. 15, 2014)................11

Myers v. Hertz Corp.,
   624 F.3d 537 (2d Cir. 2010)...........................................................................................5, 7, 13

Perez v. City of New York,
   832 F.3d 120 (2d Cir. 2016)....................................................................................................10

Reich v. Homier Distrib. Co.,
   362 F. Supp. 2d 1009 (N.D. Ind. 2005) ....................................................................................7

Ritz v. Mike Rory Corp.,
   No. 12-cv-367(JBW)(RML), 2013 U.S. Dist. LEXIS 61634 (E.D.N.Y. Apr. 29, 2013) ........12

Romero v. H.B. Auto. Grp., Inc.,
   No. 11-cv-386(CM), 2012 U.S. Dist. LEXIS 61151 (S.D.N.Y. May 1, 2012) .......................13

Rudd v. T.L. Cannon Corp.,
   No. 10-civ-591(DEP), 2011 U.S. Dist. LEXIS 21061 (N.D.N.Y. Jan. 4, 2011) ......................6

Steiner v. Mitchell,
   350 U.S. 247 (1956)..................................................................................................................9

Tarrant v. Sutherland Global Servs.,
   No. 15-cv-6320(CJS), 2015 U.S. Dist. LEXIS 110356 (W.D.N.Y. Aug. 20, 2015)...............12

**Statutes**

29 U.S.C. § 216(b) ...........................................................................................................................8

29 U.S.C. §§ 255, 256(b) ..............................................................................................................12

29 U.S.C. § 255(a) ........................................................................................................................12

**Other Authorities**

Rosina Food Products, Inc., History, Rosina Food Products, Inc.,
   https://www.rosina.com/about-rosina/history/ (last visited Jan. 17, 2025) ...............................2

## I.   PRELIMINARY STATEMENT

Defendant Rosina Food Products, Inc. ("Rosina"), submits this memorandum of law and accompanying affidavit, in opposition to Plaintiff's Motion to Certify Conditional Certification and for Court-Supervised Notice to Potential Opt-in Plaintiffs.

This case arises from the allegations of Plaintiffs Jacky Demosthene and Laquita Jones ("Plaintiffs") that Rosina failed to properly compensate hourly production employees for time spent on pre- and post-shift activities, such as donning and doffing sanitary gear. Plaintiffs seek conditional certification of a collective action under the Fair Labor Standards Act ("FLSA") based on those allegations. Specifically, the motion seeks the certification of a collective of "[a]ll current and former hourly production employees involved in the manufacturing, packaging, or handling of food or food products who worked 40 or more hours in any workweek from March 15, 2021, to the present" (the "Proposed Collective"). *See* Plaintiffs' Memorandum of Law in Support of Motion for Conditional Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs ("Pl. Mem.") at 12.

However, Plaintiffs' motion is premised on conclusory assertions and a flawed application of the FLSA's requirements for conditional certification. Plaintiffs have failed to meet their burden to show that they, the opt-in Plaintiffs, Lisa Buchbinder, Demetrius Harmon, Abbie McDonnell, and Jamila Mohamed (collectively as "Opt-in Plaintiffs") and the Proposed Collective are "similarly situated." The individualized nature of job duties and practices among Rosina's employees and locations underscores the inappropriateness of collective treatment in this case. Furthermore, Plaintiffs fail to demonstrate any FLSA violation, as the activities alleged are neither integral and indispensable to the employees' principal work activities nor compensable under the

1

*de minimis* doctrine. Additionally, Plaintiffs' proposed notice is overbroad and misleading. For these reasons, as detailed below, the motion for conditional certification should be denied.

## II.   PROCEDURAL HISTORY AND THE PARTIES

### A. Procedural History

A complaint was filed against Rosina on March 15, 2024, on behalf of Plaintiffs and other similarly situated employees. The Complaint alleges that Rosina failed to compensate employees for time spent donning and doffing sanitary clothing and performing related activities, in violation of the FLSA and New York Labor Law ("NYLL"). Plaintiffs assert that these activities were integral and indispensable to their work duties. *See* Pl. Mem. at 8. Plaintiffs filed this motion for conditional certification on June 18, 2024, seeking to certify a collective of all hourly production employees who worked at any Rosina facility since March 2021. *See* Pl. Mem. at 1.

### B. Rosina Food Products, Inc.

Founded in 1963, Rosina started as a family-owned sausage business in Buffalo, New York, catering to neighborhood meat markets, supermarkets, and family-owned restaurants. *See* Rosina Food Products, Inc., History, Rosina Food Products, Inc., https://www.rosina.com/about-rosina/history/ (last visited Jan. 17, 2025). James Corigliano, the founder, named the company after his wife, Rose. Id. In 1972, James received a call from his church pastor, requesting his help in creating a meatball for a parish fundraiser. Id. Using Rose's personal recipe and the support of parishioners, James crafted the meatballs, which became an instant success at the event. Id. This charitable contribution marked a pivotal moment in Rosina's history. By the mid-1970s, James' two sons joined the business, eventually assuming ownership in 1997. Id. Today, Rosina remains a family-owned company and has grown into one of the most prominent food manufactures in the United States Id.

Rosina produces a wide range of high-quality products, including meatballs, frozen pasta, and Italian-style entrées. *See* Declaration of Curtis Froebel ("Froebel Dec."), ¶ 2. Rosina's products are distributed across North America and the Caribbean, serving supermarkets, wholesale clubs, restaurants, schools, universities and military commissaries. Id. Rosina employs over 600 Associates in diverse roles across multiple facilities. Id., ¶ 3.

Rosina manufactures its products in the Buffalo metropolitan area, having consolidated all production from acquisitions to this region. Rosina associates currently operate two manufacturing facilities in West Seneca, New York—one dedicated to meatball production and the other to frozen-filled pasta products. Id., ¶ 4. Previously, Rosina operated a third facility in Cheektowaga, New York, which was replaced in 2021 by the current meatball production facility. The Cheektowaga location is now used exclusively for certain packaging operations. Id., ¶ 5.

Each facility serves a specific purpose: packaging at 170 French Rd, Cheektowaga, NY ("Site 1"); producing pasta and other products at 75 Empire Dr, West Seneca, NY ("Site 2"); and, producing protein products at 3100 Clinton St, West Seneca, NY ("Site 3"). Id., ¶ 6. These distinct operations result in unique practices at each site, due to the ingredients used at each facility, the machinery used and the production process, particularly concerning donning and doffing sanitary gear and workflow protocols. Id., ¶ 7. Additionally, within each plant, there are a variety of job positions that may require different sanitary gear. Id., ¶ 8. For instance, Site 1's focus on packaging requires employees to adhere to different gear than Site 2's pasta production processes or Site 3's protein-specific tasks. Id., ¶ 7

The individualized nature of these roles and practices highlights the inappropriateness of collective certification. Certification would necessitate fact-intensive inquiries into each

3

30564945.1

employee's specific experiences, further demonstrating that Plaintiffs, the Opt-in Plaintiffs and the Proposed Collective are not "similarly situated."

### C. Plaintiffs and Opt-in Plaintiffs

The Plaintiffs and the Opt-in Plaintiffs, each worked at different Rosina facilities and in distinct roles. Plaintiff Demosthene primarily worked as a machine operator at Site 2 (*see* Declaration of Jacky Demosthene ("Demosthene Decl."), ¶¶ 3-5), while Opt-in Plaintiff Buchbinder performed tasks on the pasta line at Site 2 (*see* Declaration of Lisa Buchbinder ("Buchbinder Decl."), ¶¶ 3-5). Opt-in Plaintiff Harmon worked as an overnight cleaner at Site 1. S*ee* Declaration of Demetrius Harmon ("Harmon Decl."), ¶¶ 3-5. Meanwhile, Opt-in Plaintiffs McDonnell and Mohamed worked primarily as a production associates at Site 2. S*ee* Declaration of Abbie McDonnell ("McDonnell Decl."), ¶¶ 3-5 and Declaration of Jamila Mohamed ("Mohamed Decl."), ¶¶ 3-5. Plaintiff Laquita Jones also worked at Site 2, working on pasta production line operations. S*ee* Declaration of Laquita Jones ("Jones Decl."), ¶¶ 3-5.

Five of the six (Plaintiffs and/or Opt-in Plaintiffs) are or were employed at Site 2, the pasta and entrée plant, and they generally describe performing various tasks related to the pasta line. S*ee* Jones Decl., ¶¶ 4-5; Buchbinder Decl., ¶¶ 4-5; Demosthene Decl., ¶¶ 4-5; McDonnell Decl., ¶¶ 4-5; Mohamed Decl., ¶¶ 4-5. In contrast, the sole Declarant from Site 1 does not share these duties. S*ee* Harmon Decl., ¶¶ 4-5. Neither the Plaintiffs nor any Opt-in Plaintiffs were employed at Site 3.

The tasks performed by Harmon at Site 1 were focused on cleaning machines used to manufacture, process, and package food products, as well as moving totes of food during cleaning. S*ee* Harmon Decl. ¶ 5. This distinction is further reflected in the pre-shift activities assigned to each group. For example, Opt-in Plaintiff Harmon did not attest to using the foot bath, whereas

the Plaintiffs and other Opt-in Plaintiffs did attest to doing so. *Compare* Harmon Decl., ¶¶ 6-8 *with* Buchbinder Decl., ¶¶ 6-8; Demosthene Decl., ¶¶ 6-8; McDonnell Decl., ¶¶ 6-8 *and* Mohamed Decl., ¶¶ 6-8. Additionally, all Declarants from both sites describe varying combinations of sanitary uniforms, gear, and pre-shift activities, which inherently require differing individual specific amounts of time to don, doff, and complete. *See* Jones Decl., ¶¶ 6-8; Buchbinder Decl., ¶¶ 6-8; Demosthene Decl., ¶¶ 6-8; Harmon Decl., ¶¶ 6-8; McDonnell Decl., ¶¶ 6-8; Mohamed Decl., ¶¶ 6-8. These differences underscore the individualized nature of their work and the varying time that each individual needed to don and doff, not only between different sites but also among employees within the same site.

### III.   LEGAL STANDARD FOR CONDITIONAL CERTIFICATION

Under the FLSA, Plaintiffs bear the burden of making a "modest factual showing" that they and the proposed collective were victims of a common policy or plan that violated the law. *See* Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010). While this burden is modest, it is not insignificant or devoid of substance. *See* Fraticelli v. MSG Holdings, L.P., No. 13-cv-6518(JMF), 2014 U.S. Dist. LEXIS 63167, at *1 (S.D.N.Y. May 7, 2014). Courts in this circuit routinely deny certification where Plaintiffs rely on generalized and conclusory assertions that fail to demonstrate a factual nexus between their claims and those of the proposed collective. Han v. Madison Ave. Realties, LLC, No. 24-cv-04658(LJL), 2022 U.S. Dist. LEXIS 120849, at *3 (S.D.N.Y. July 8, 2022). "[U]nsupported assertions" are similarly insufficient. Imbarrato v. Banta Mgmt. Servs., Inc., No. 18-cv-5422(NSR), 2022 U.S. Dist. LEXIS 75179, at *3 (S.D.N.Y. Apr. 25, 2022) (quoting Myers, 624 F.3d at 555); Flores v. Osaka Health Spa, Inc., No. 05-cv-962(JSR), 2006 U.S. Dist. LEXIS 11378, at *3 (S.D.N.Y. Mar. 16, 2006). The standard also requires Plaintiffs to

5

demonstrate not only a common policy but that the policy was unlawful under the FLSA. Where no such violation exists, certification is improper.

A court must also take a measured approach in addressing conditional certification requests, mindful of the potential burdens on defendants associated with defending against an FLSA claim involving a large and broadly defined collective group. *See generally* Rudd v. T.L. Cannon Corp., No. 10-civ-591(DEP), 2011 U.S. Dist. LEXIS 21061, at *6 (N.D.N.Y. Jan. 4, 2011) ("Although the standard governing plaintiffs' application is lax and their burden modest, a court must nonetheless take a measured approach when addressing a request for collective action certification, mindful of the potential burdens associated with defending against an FLSA claim involving a large and broadly defined collective group of plaintiffs.").

Certification is particularly inappropriate where significant differences among employees' roles, abilities, responsibilities, and work environments undermine the "similarly situated" requirement, necessitating highly individualized inquiries. Holick v. Cellular Sales of N.Y., LLC, No. 12-cv-584(NAM/DJS), 2019 U.S. Dist. LEXIS 70399, at *2 (N.D.N.Y. Apr. 26, 2019) ("The Court finds that Plaintiffs' disparate and highly individualized experiences with the Defendants are not conducive to the production of representative evidence required to proceed collectively.").

Here, Plaintiffs' and Opt-in Plaintiffs' declarations fail to demonstrate the existence of a common policy or practice that violated the FLSA. Instead, it highlights differences among employees, their specific abilities, including job duties, and facility-specific practices which result in their own individualized employee experience. Such disparities preclude collective treatment under the FLSA.

## IV.     ARGUMENT

### A. <u>Plaintiffs Have Failed to Demonstrate that the Putative Collective is Similarly Situated</u>

The Court should deny Plaintiffs' Motion because the evidence highlights significant differences among the Plaintiffs, Opt-in Plaintiffs and the Proposed Collective, requiring hundreds, if not thousands, of mini-trials to determine whether they are similarly situated. This individualized inquiry is fundamentally at odds with the purpose of collective action under the FLSA, which is to provide an efficient means of resolving similar claims on a group basis. *See*, *e.g.*, <u>Reich v. Homier Distrib. Co.</u>, 362 F. Supp. 2d 1009, 1015 (N.D. Ind. 2005) ("individual discovery required . . . would destroy the economy of scale envisioned by the FLSA collective action procedure"); *see also* <u>Myers</u>, 2006 U.S. Dist. LEXIS 100597, at *13 ("Many courts, both in this Circuit and elsewhere, have declined to find potential plaintiffs similarly situated where liability depends upon such an individualized determination.").

#### *1. Plaintiffs' Claims Require Individualized Inquiries*

The declarations submitted by Plaintiffs and Opt-in Plaintiffs underscore substantial variations in job duties and work environments among the proposed collective members, demonstrating that they are not similarly situated. At the notice stage, Plaintiffs bear the burden of making a modest factual showing that they and potential opt-in plaintiffs were subject to a common policy or plan that violated the law. *See* <u>Myers</u>, 2006 U.S. Dist LEXIS 100597, at *13. However, Plaintiffs' assertions are generalized, conclusory, and repetitive, falling short of the required factual nexus.

Plaintiffs outline a diverse set of responsibilities, including machine operation, assembly line tasks, cleaning, and packaging. However, the time required for donning and doffing sanitary gear is either insufficiently defined—or not defined at all—and appears to vary significantly

7

among employees. For instance, Plaintiff Jacky Demosthene worked primarily as a machine operator at Site 1 (*see* Demosthene Decl. ¶¶ 3-5), while Opt-in Plaintiff Demetrius Harmon worked as an overnight cleaner at Site 1, focusing on cleaning and maintenance tasks (*see* Harmon Decl. ¶¶ 3-5). Opt-in Plaintiff Lisa Buchbinder performed line production duties at Site 2 (*see* Buchbinder Decl. ¶¶ 3-5).

The time spent donning and doffing sanitary gear is also alleged to have differed significantly between individual and facilities., depending on the facility and role. Plaintiffs site donning times of between 5 and 20 minutes *See*, *e.g.*, Buchbinder Decl. ¶¶ 8-9 and Jones Decl. ¶¶ 8-9. These disparities necessitate highly fact-specific inquiries into each employee's unique circumstances and abilities, precluding collective treatment under the FLSA. Each employee's individualized experience will need to be analyzed and determined, making a collective approach impractical and inappropriate.

    2. *Non-Integral* Activities *and the De Miniums Doctrine*

At the core of Plaintiffs' claims is the assertion that time spent donning and doffing generic protective gear constitutes compensable work under the FLSA. However, the law and facts in this case demonstrate otherwise.

Under the FLSA, a collective action may only proceed where there is a common unlawful policy or practice that violates the Act. *See* 29 U.S.C. § 216(b). When no violations of the FLSA exist—such as when activities are deemed neither integral nor indispensable—there is no basis for collective treatment. Hanming Feng v. Soy Sauce LLC, No. 15-cv-3058(ENV)(LB), 2016 U.S. Dist. LEXIS 32820, at *3 (E.D.N.Y. Mar. 14, 2016) ("As a prerequisite to a collective action, the named plaintiff must demonstrate that he, himself, was a victim of the defendants' illegal pay practices."). As will be discussed, the claims being made here for unpaid work are either not

compensable or, if compensable, are *de minimis*, both lead to the conclusion that no FLSA violation occurred.

"The Second Circuit has made clear that time spent entering and exiting the facility, and donning and doffing a uniform is not compensable under the FLSA." Grande v. 48 Rockefeller Corp., No. 21-cv-1593 (PGG)(JLC)*,* 2023 U.S. Dist. LEXIS 140490, at *10 (S.D.N.Y. Aug. 11, 2023) (internal quotations and citations omitted); *see also* Adams v. Bloomberg L.P., No. 20-cv-7724 (RA)(JLC), 2023 U.S. Dist. LEXIS 23757, at *23 (S.D.N.Y. Feb. 13, 2023) ("[T]ime spent preparing to work, such as donning gear, and time spent preparing to leave work, such as taking off gear, is not compensable.").

However, the Supreme Court, in Steiner v. Mitchell, held that activities before or after the regular work shift can be compensable if those activities are both integral and indispensable to the principal activities of employment. Steiner v. Mitchell, 350 U.S. 247, 256 (1956). This holding was narrowed by the Second Circuit in Gorman v. Consolidated Edison Corporation, the Second Circuit set a very narrow interpretation of "integral and indispensable." Gorman v. Consolidated Edison Corporation, 488 F.3d 586, 591 (2d Cir. 2007) (holding in part that the donning and doffing of metal capped safety boots, safety glasses, and a helmet was not indispensable and therefore not compensable).

In Gorman, the Second Circuit held that for an activity to be compensable, it must be both necessary (indispensable) and an essential part of the work (integral) emphasizing that the gear and the time spent donning and doffing must be related to a hazardous environment where protective measures are essential, using the example of a diver donning specialized gear, even though they were not employed as a diver. Id. at 593 ("*Steiner* therefore supports the view that when work is done in a lethal atmosphere . . . just as a diver's donning of wetsuit, oxygen tank and

9

mouthpiece may be integral to the work . . . [b]y contrast, the activities for which plaintiffs here seek compensation, while arguably indispensable, are not integral to their principal activities.").

The distinction made in Perez v. City of New York, 832 F.3d 120 (2d Cir. 2016), which Plaintiffs rely on for the definition of what is deemed integral and indispensable, involved whether the time park rangers spent donning and doffing their uniforms was compensable. The case is distinguishable and does not apply here because the court found that the park ranger uniforms did not solely serve to protect against workplace hazards but also functioned as specialized items used for law enforcement tasks. Id. at 126. Furthermore, the court determined that the uniforms, which included a bulletproof vest, baton, mace, and handcuffs, were not generic protective items like helmets, safety glasses, and steel-toed boots, as those at issue in Gorman (and in this case). Id.

As indicated in the Plaintiffs and Opt-in Plaintiffs Declarations, Rosina employees wear a combination of all or some of the following items: coat, shirt, pants, boots, nets, plastic bump cap, hearing protection, and eye protection. Although the employees wear these respective items for many different reasons (i.e., industry best practice, regulations, to keep food wholesome, personal protection, etc.), all of the items are generic and can be used for a multitude of different jobs. Unlike park ranger uniforms, bulletproof vests, batons, mace, or handcuffs at issue in *Perez*— which are very specific to the work of a law enforcement officer and guard against workplace dangers that transcend ordinary risks—nothing that Rosina employees wear distinguishes it from general generic gear, and therefore time spent donning same is not compensable.

Additionally, even if the time spent donning and doffing were considered integral, it would still fail to meet the compensable threshold under the *de minimis* doctrine. Courts routinely find that short periods of preparatory activities are *de minimis* and not compensable. *See, e.g.*, Haight v. Wackenhut Corp., 692 F. Supp. 2d 339, 345 (S.D.N.Y. 2010) ("The Court concludes that the

10

time spent donning and doffing generic protective gear is de minimis."). This Court has recognized that in some circumstances, periods of up to fifteen minutes or more are often deemed *de minimis*. See Albrecht v. Wackenhut Corp., No. 07-cv-6162, 2009 U.S. Dist. LEXIS 88073, at *30-31 n.7 (W.D.N.Y. Sep. 24, 2009) ("While there is no bright-line test for determining how much time will be considered *de minimis* for FLSA purposes, time periods of fifteen minutes or more have often been found to be *de minimis*.").

The declarations offered by Plaintiffs and the Opt-in Plaintiffs further confirm that the time required for these activities while vary, remain well within this non-compensable range. The activities described are neither integral to their principal work tasks nor substantial enough to overcome the de minimis threshold. These facts and consistent with Second Circuit precedent all show that no FLSA injury occurred and therefore conditional certification is inappropriate here.

B.  Any Ruling on The Proposed Notice Should Be Deferred

Rosina believes Plaintiffs motion for conditional collective certification must be denied, and therefore no notice is required. However, should the Court determine that some form of conditional certification is warranted, Rosina respectfully requests that the Court require the parties to meet and confer within 30 days of the issuance of the Court's order, to determine the content and form of notice. This will allow the parties to identify any issues which may exist following the Court's decision and tailor the notice accordingly. Courts in this Circuit routinely follow this course. *See* Flood v. Carlson Rests., Inc., 14-civ-2740(AT), 2015 U.S. Dist. LEXIS 6608, at *17-18 (S.D.N.Y. Jan. 20, 2015) ("Pursuant to Defendants' request, the Court directs the parties to first meet and confer on both the form and dissemination of notice"); Costello v. Kohl's Illinois, Inc., No. 13-cv-1359, 2014 U.S. Dist. LEXIS 124376, at *8 (S.D.N.Y. Sept. 4, 2014) (directing similar meet-and-confer period); Mark v. Gawker Media LLC, No. 13-cv-4347(AJN), 2014 U.S. Dist.

LEXIS 114011, at *23 (S.D.N.Y. Aug. 15, 2014) ("In its opposition brief, [defendant] requests 'an opportunity to meet and confer with Plaintiffs' counsel concerning the proposed notice' . . . That request is granted"). This approach is particularly appropriate given the deficiencies in Plaintiffs' proposed notice, summarized below.

### C. The Proposed Notice Requires Modification

#### 1. *The Putative Collective Group for Notice Should Be At Most Three Years Prior to the Date of Any Order*

FLSA claims are governed by a two-year statute of limitations unless the violations of the FLSA are willful, in which case the statute of limitations is three years. *See* 29 U.S.C. § 255(a). The FLSA limitations period measures two or three years from the date written consent is filed with the court. *See* 29 U.S.C. §§ 255, 256(b). Thus, unlike a traditional class action, where the statute of limitations is tolled for putative class members when the complaint is filed, the filing of an FLSA collective action complaint does not toll the statute of limitations of a putative class member's FLSA claims.

Should the Court find that notice should be sent out to putative collective members, (which Rosina believe should not be the case), notice should be limited to, at most, a three-year lookback period from the date of this Court's order or the date of the issuance of the notices, and not the date Plaintiffs filed their initial complaint. *See* Tarrant v. Sutherland Global Servs., No. 15-cv-6320(CJS), 2015 U.S. Dist. LEXIS 110356, at *3 (W.D.N.Y. Aug. 20, 2015) (conditionally certifying a class consisting of service representatives who worked for defendant during preceding three years measured from date of the order); Ritz v. Mike Rory Corp., No. 12-cv-367(JBW)(RML), 2013 U.S. Dist. LEXIS 61634 (E.D.N.Y. Apr. 29, 2013) ("However, under the FLSA, the notice period generally should be measured from the date of the court's order granting the motion for conditional certification, not from the date that the complaint was filed.").

12

*2. The Scope of the Proposed Notice is Overly Broad*

Plaintiffs seek to include "all current and former hourly production employees" who worked at any of Rosina's facilities since March 2021. However, this sweeping definition is overly broad. The declarations submitted by Plaintiffs and Opt-in Plaintiffs reveal substantial differences among employees in their job duties, work environments, and practices at the various Rosina facilities.

Limiting the collective to employees who worked at the same facilities as the Plaintiff sand Opt-in Plaintiffs, and the roles they filed, aligns with the principles of judicial economy and the purpose of the FLSA's collective action procedure. *See* Myers, 624 F.3d at 555. It ensures that any certified collective reflects the shared factual and legal issues necessary to support efficient resolution. Including employees from all facilities and all roles would instead result in unnecessary complexity, hyper individualized assessments, burdening the Court and the parties with individualized discovery and mini-trials. *See* Romero v. H.B. Auto. Grp., Inc., No. 11-cv-386(CM), 2012 U.S. Dist. LEXIS 61151, at *39 (S.D.N.Y. May 1, 2012) (denying conditional certification, in part, because the putative opt-ins were not similarly situated with respect to their job duties to the Plaintiff).

Therefore, should the Court find certification appropriate, it should limit any collective certification to employees at Sites 1 and 2, in roles identical to those held by the Plaintiffs and Opt-in Plaintiffs, to ensure the collective is appropriately defined and consistent with the evidence presented.

*3. Defense Counsel's Contact Information Should Be Included on the Notice*

Defense counsel's contact information also should be included in the notice to ensure transparency and neutrality. Courts have held that including defense counsel's contact information

in FLSA notices helps potential opt-in plaintiffs make informed decisions about their rights and the scope of the litigation. *See* Hart v. Crab Addison, Inc., No. 10-cv-755(ILG), 2015 U.S. Dist. LEXIS 9197, at *10-11 (W.D.N.Y. Jan. 27, 2015); *see also* Andujar v. SKYC Mgmt. LLC, No. 23-cv-8764(MKV), 2024 U.S. Dist. LEXIS 209188, at *12 (S.D.N.Y. Nov. 15, 2024) ("[C]ourts in this Circuit have generally concluded that the contact information of defendants' counsel is appropriate for inclusion in a notice of collective action."). Including this information ensures that the notice is balanced and does not appear to endorse Plaintiffs' claims. By providing both parties' contact information, the notice maintains its neutrality and avoids creating the impression that the Court is taking sides in the litigation.

## V.     CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for conditional certification and court-supervised notice. In the alternative, the Court should significantly narrow the scope of the proposed collective and require modifications to the proposed notice to ensure neutrality and protect the rights of all parties involved.

Date:   January 17, 2025
        Buffalo, New York

                                            **BARCLAY DAMON LLP**

                                        By:   Arianna E. Kwiatkowski /s/
                                               Arianna E. Kwiatkowski
                                               *Attorneys for Defendant*
                                               200 Delaware Avenue, Suite 1200
                                               Buffalo, NY 14202
                                               Telephone: 716-858-3869
                                               Facsimile: 716-566-4009
                                               Email:akwiatkowski@barclaydamon.com

30564945.1

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 17, 2025, I electronically filed with the Clerk of the District Court using its CM/ECF system the foregoing Memorandum of Law and Declaration of Curtis Froebl, both dated January 17, 2025, which would then electronically notify the following CM/ECF participants on this case via email as follows:

Hans A. Nilges, Esq.<br>
Nilges Draher LLC<br>
*Attorney for Plaintiffs*<br>
7034 Braucher Street NW; Suite B<br>
North Canton, OH 44720<br>
E-mail:  hans@ohlaborlaw.com

                                         /s/  *Arianna Kwiatkowski*
                                         Arianna Kwiatkowski, Esq.

30564945.1