

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

JACKY DEMOSTHENE, individually and
on behalf of others similarly situated,

                    Plaintiff,

    -v-

ROSINA FOOD PRODUCTS, INC.,

                  Defendant.

———————————————————————

        1:24-CV-225-JLS-MJR
        DECISION AND ORDER

       This case has been referred to the undersigned by the Hon. John L. Sinatra, Jr. for all pre-trial matters and to hear and report on dispositive motions. (Dkt. No. 11). Presently before the Court is plaintiff's motion for conditional certification of a Fair Labor Standards Act ["FLSA"], 29 U.S.C. §§ 201, *et seq.*, collective action. (Dkt. No. 13). For the following reasons, plaintiff's motion for conditional certification and court-supervised notice is granted.[1]

## BACKGROUND

       Plaintiff Jacky Demosthene ("plaintiff") brings this action on behalf of herself and all other similarly situated individuals seeking relief for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201-219, by defendant Rosina Food Products, Inc. ("defendant"). (Dkt. No. 1 (Complaint)).[2]

———————————————

[1] A motion for conditional certification of an FLSA collective action is a non-dispositive motion within the authority of a magistrate judge. *See Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383-84 (E.D.N.Y. 2010).

[2] Plaintiff's complaint also seeks class action relief on behalf of herself and all other similarly situated individuals for defendant's alleged violations under the New York Labor Law § 190, *et seq.* (*See* Dkt. No. 1 (Complaint)).

Plaintiff's complaint alleges the following facts: Defendant manufactures, packages, distributes, and sells food products in West Seneca, New York. (Dkt. No. 1, ¶ 16). Plaintiff and other employees were production workers in defendant's food production facilities within the last six years. (*Id.*, ¶ 17). Plaintiff and other employees were involved in the manufacturing, packaging, and handling of food, and their job duties required them to come into contact with food, food-contact surfaces, and/or food packaging. (*Id.*, ¶ 18). Plaintiff and other employees were required to wear certain personal protective equipment, such as a hard hat, hearing protection, and safety glasses, and sanitary clothing, such as a hairnet, gloves, lab coat, or sanitary smock. (Dkt. No. 19; 21). Unlike the personal protective equipment, the sanitary clothing offered employees no protection from injury. (*Id.*, ¶ 22). Production employees wore sanitary clothing while working because of the unique nature of the job duties they were performing – the processing, manufacturing, and packaging of food products for human consumption. (*Id.*, ¶ 23). Production employees wore sanitary clothing to mitigate the risk of contaminants entering the food products and to prevent the spread of foodborne illness and disease. (*Id.*, ¶¶ 25-27). Wearing sanitary clothing while working in the processing, manufacturing, and packaging of food products for human consumption is also a legal requirement for defendant's production employees under the Food, Drug, and Cosmetic Act. (*Id.*, ¶ 31).

In support of this motion, plaintiff submits her own declaration and the declarations of five other employees of defendant. (See Dkt. Nos. 13-3 – 13-8). Plaintiff Jacky Demosthene attests that she was employed by defendant from approximately September 2004 until December 2019. (Dkt. No. 13-5, ¶ 3). Demosthene worked as an hourly machine operator at defendant's facility in West Seneca, New York. (*Id.*, ¶ 4).

Demosthene's job duties put her in direct contact with food, food-contact surfaces, and food packaging materials. (*Id.*, ¶ 5). Opt-in plaintiff Laquita Jones attests that she was employed by defendant from approximately January 2015 to the present. (Dkt. No. 13-3, ¶ 3). Jones worked as an hourly production worker at defendant's facility in West Seneca, New York. (*Id.*, ¶¶ 3-4). Jones's job duties put her in direct contact with food, food-contact surfaces, and food packaging materials. (*Id.*, ¶ 5).

Demosthene and Jones, like defendant's other food production employees, had to follow certain sanitary sterilization protocols before starting work. (Dkt. Nos. 13-3, ¶ 6; 13-5, ¶ 6). This included donning a sanitary uniform consisting of a white jacket and white pants, as well as gloves, an apron, plastic sleeves, and a hairnet. (*Id.*, ¶ 9). Plaintiffs were not permitted to take any of their sanitary gear home with them. (*Id.*, ¶ 7). Rather, they were laundered and provided by defendant, and had to be donned at defendant's facility. (*Id.*).

Opt-in plaintiff Jones typically arrived 15-20 minutes prior to the start of her scheduled shift to change into her sanitary uniform and other sanitary gear, and then wash her hands. (Dkt. No. 13-3, ¶ 8). Jones was not paid for any of this time. (*Id.*). Rather, defendant only started paying Jones at her scheduled shift start time. (*Id.*). Jones was also not paid for the time she spent taking off her sanitary uniform and other sanitary gear at the end of a shift. (*Id.*, ¶ 9). Jones regularly works 40 or more hours per week for defendant, not including the time spent donning and doffing her sanitary uniform and gear. (*Id.*, ¶ 9-10).

Plaintiff Demosthene and other employees had nearly identical experiences working for defendant. Lisa Buchbinder, Demetrius Harmon, Abbie McDonnell, and

Jamila Mohamed each worked for defendant as food production employees. (Dkt. Nos. 13-4; 13-6; 13-7; 13-8). These employees attest that they had to don and doff sanitary clothing and gear, and perform hand and/or foot sanitization procedures, before and after their work shift but were not paid for that time. (*Id*.). Each declarant also states that he or she observed other employees donning and doffing sanitary clothing and gear outside of their regularly scheduled shift time. (*Id*.).

Plaintiff asserts that it was defendant's widespread practice to have food production employees don and doff sanitary clothing and gear outside of their regularly scheduled shift time. (Dkt. No. 13-1, pg. 6). Plaintiff further asserts that because she and other employees generally worked 40 or more hours per workweek, if they had been compensated for the time spent donning and doffing their sanitary uniform and other gear, they would have been paid at the time-and-a-half overtime rate mandated by the FLSA. (*Id*.).

On June 18, 2024, plaintiff filed the instant motion for conditional certification of an FLSA collective action and court-supervised notice to potential opt-in plaintiffs. (Dkt. No. 13). Plaintiff requests that the Court direct issuance of notice to putative collective members by United States mail, email, and text message. (*Id*.). Plaintiff proposes that notice be sent to the following potential collective:

> All current and former hourly production employees of Rosina Food Products, Inc. who were involved in the manufacturing, packaging, or handling of food or food products and who worked 40 or more hours in any workweek from March 15, 2021 to the present.

(*Id*.). Plaintiff further requests that defendant be directed to provide an electronic spreadsheet of all individuals that fit this definition, including their full names, dates of employment, last known home addresses, personal email addresses, and phone

numbers, and that defendant provide a declaration affirming that the produced roster fully complies with the Court's order. (*Id.*).

Defendant opposes plaintiff's motion for conditional certification. (Dkt. No. 22). In the event conditional certification is granted, defendant asks the Court to make certain modifications to plaintiff's proposed notice or to allow the parties an opportunity to meet and confer to determine the contents and form of such notice. (Dkt. No. 22). Plaintiff replied to defendant's response and made a supplemental filing in support of her motion. (Dkt. Nos. 23; 24). The Court heard oral argument on the motion on February 11, 2025, at which time it considered the matter submitted for decision.

## DISCUSSION

I.    *Conditional Certification*

Under the FLSA, "no employer shall employ any of his employees […] for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The FLSA creates a cause of action against employers who violate the overtime requirement, and affected employees may bring suit against an employer on behalf of "themselves and other employees similarly situated." *Id.* § 216(b). "Unlike a representative action under Rule 23 of the Federal Rules of Civil Procedure, where all persons in the defined class are bound by the case outcome unless they affirmatively 'opt out,' an employee does not become a party to an FLSA collective action unless he or she affirmatively 'opts in' by filing written consent with the court." *Gordon v. Kaleida Health*, No. 08-CV-378S, 2009 U.S. Dist. LEXIS 95729, at *11 (W.D.N.Y. Oct. 14, 2009).

The Court has the discretion to facilitate notice to potential plaintiffs of the pendency of an FLSA lawsuit and their opportunity to opt-in as represented plaintiffs. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989); *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010). "This is often referred to as certification, although as the Second Circuit Court of Appeals observed in *Myers,* it is not 'certification' in the traditional class action sense and 'nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice […] has not been sent, so long as such plaintiffs are 'similarly situated' to the named individual plaintiff who brought the action.'" *Acevedo v. WorkFit Med. LLC*, No. 14-CV-06221-EAW, 2014 U.S. Dist. LEXIS 131269, at *5 (W.D.N.Y. Sept. 16, 2014) (alteration in original) (quoting *Myers*, 624 F.3d at 555 n.10). Courts follow a two-step process to determine whether a lawsuit should proceed as an FLSA collective action:

> The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred. The court may send this notice after plaintiffs make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law. . . At the second stage, the district court will, on a fuller record, determine whether a so-called collective action may go forward by determining whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs. The action may be de-certified if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice.

*Myers*, 624 F.3d at 555 (internal quotation marks, citations, and alterations omitted). "The first of these steps is typically referred to as 'conditional certification.'" *Acevedo*, 2014 U.S. Dist. LEXIS 131269, at *6 (quoting *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 402 (S.D.N.Y. 2012)). "Plaintiffs' burden on a conditional certification motion is 'minimal,

especially since the determination that potential plaintiffs are similarly situated is merely a preliminary one.'" *Id.* at \*4 (quoting *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003)). "[T]he court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations[, and a]ccordingly, an FLSA collective action may be conditionally certified upon even a single plaintiff's affidavit." *Robbins v. Blazin Wings, Inc.*, No. 15-CV-6340 CJS, 2016 U.S. Dist. LEXIS 35446, at \*19 (W.D.N.Y. Mar. 18, 2016) (second alteration in original) (quoting *Escobar v. Motorino E. Vill. Inc.*, No. 14 CIV. 6760(KPF), 2015 U.S. Dist. LEXIS 104348, at \*2 (S.D.N.Y. Aug. 10, 2015)). Given this "fairly lenient" standard, conditional certification is "typically grant[ed]." *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345(NRB), 2013 U.S. Dist. LEXIS 135926, at \*30 (S.D.N.Y. Sept. 20, 2013) (quoting *Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09 Civ. 322(CM), 2009 U.S. Dist. LEXIS 51790, at \*2 (S.D.N.Y. June 3, 2009)).

This case is in the initial step of the certification process which requires plaintiff to make a modest factual showing that she and others were victims of a common policy or plan that violated the FLSA. Plaintiff asserts that because the donning and doffing of sanitary clothing was an integral and indispensable part of the "principal activity" of her work, and the work of other similarly situated employees, it was compensable time under the FLSA for which she and other employees should have been compensated. *See Morris v. Alle Processing Corp.*, 08-CV-4874, 2009 U.S. Dist. LEXIS 150559, at \*4 (E.D.N.Y. Dec. 22, 2009) (granting conditional certification of a collective of food service employees who alleged they were not compensated for time spent donning and doffing uniforms, including an apron, coat, boots, gloves, hairnet, and hardhat).

In *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 37 (2014), the Supreme Court reiterated that the term "principal activity," which is compensable under the FLSA, includes all activities that are an "integral and indispensable to the principal activity." However, the FLSA does not require payment for time spent on "activities which are preliminary to or postliminary to" an employee's principal activities. 29 U.S.C. § 254(a)(2). An activity qualifies as "integral" if it is "intrinsically 'connected with'" a principal activity that an employee was hired to perform. *Perez v. City of N.Y.*, 832 F.3d 120, 124 (2d Cir. 2016). And an activity is "indispensable" if it is "necessary" to the performance of a principal activity. *Id*. An activity is therefore "integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id*. The Second Circuit explained that this standard is "markedly fact-dependent." *Id.*

In support of this motion, plaintiff has submitted the declarations of herself and five other employees of defendant which attest to the fact that they were required to don sanitary uniforms and gear, and perform sanitary protocol, namely hand washing and foot sanitization, prior to their shifts in order to protect public health and prevent contamination of food products. Plaintiff alleges that although employees spent time donning, doffing, and performing sanitary procedures every shift, they were not paid for this work time. Plaintiff argues that the donning and doffing of sanitary clothing is an integral and indispensable part of the food production work she was employed to perform, and defendant's failure to compensate her for this work constitutes a violation of the FLSA.

In opposition, defendant submits that plaintiff has failed to show that the putative class is similarly situated. Defendant first argues that plaintiff's claims will require individualized inquiries about various job duties and work environments affecting the specific sanitary gear needed and the time spent by employees donning and doffing uniforms and gear. Defendant has submitted the declaration of Curtis Froebel, Vice President of Operations for Rosina Food Products, attesting that it operates three food production and packaging plants at three different locations in Western New York. (Dkt. No. 22-1). Each facility has distinct operations involving different food products and/or food packaging. (*Id.*). Thus, defendant argues, that the tasks performed by employees at each location and in each job role vary significantly.

The Court does not find defendant's argument to be persuasive. Plaintiff has provided declarations from employees in multiple job roles (ex: machine operator, production associate, overnight cleaner) who worked at two of the three Rosina facilities. (*See* Dkt. Nos. 13-3 – 13-8). The substance of each employee declaration is identical; reflecting that employees in several job titles and in more than one facility location were subject to similar sanitary uniform requirements and that they were not compensated for time spent complying with those requirements. At this preliminary stage, plaintiff has made the "modest factual showing" that she and the putative collective members are similarly situated with regard to the alleged common policy or plan of defendants in violation of the FLSA. Thus, the Court directs that notice of this collective action shall be sent to all production employees involved in the manufacturing, packaging, or handling of food or food products, regardless of their specific job titles, at all three of defendant's production facilities.

Defendant next argues that the uniform and gear alleged to be used by plaintiff is generic protective gear for which the time spent donning and doffing is not compensable under the FLSA.[3] Despite defendant's argument, conditional certification does not call for an ultimate merits decision on the compensability of these activities. In fact, the "integral and indispensable" work activity analysis is a fact-dependent issue which is unlikely to be resolved without development of a full factual record.

Lastly, defendant argues that the amount of time spent by employees donning and doffing uniforms and gear is *de minimis* and not compensable. *See Haight v. Wackenhut Corp.*, 692 F. Supp. 2d 339, 345 (S.D.N.Y. 2010); *Albrecht v. Wackenhut*, 07-CV-6162-MAT, 2009 U.S. Dist. LEXIS 88073, at *30-31 n.7 (W.D.N.Y. Sept. 24, 2009) ("While there is no bright-line test for determining how much time will be considered *de minimis* for FLSA purposes, time periods of fifteen minutes or more have often been found to be *de minimis*.").

Defendant's argument is premature. The issue of whether compensable time is *de minimis* is fact-dependent and not ripe for consideration at the first step of conditional certification. *See Perez*, 832 F.3d at 127 (leaving *de minimis* analysis to the district court because of its fact-dependent nature). Furthermore, a court must look at the aggregate

---

[3] Defendant believes that the uniform and gear worn by its employees is not integral or indispensable to principal work activities because it is generic, utilized in a multitude of different jobs, and does not guard against a workplace danger that transcends ordinary risks. As defendant points out, the Second Circuit has held that "[t]he donning and doffing of generic protective gear is not rendered integral by being required by the employer or by government regulation." *See Gorman v. Consolidated Edison Corporation*, 488 F.3d 586, 593-94 (2d Cir. 2007). In response, plaintiff argues that generic uniforms are readily distinguishable from sanitary clothing worn during all aspects of food production to prevent contamination of food products. Plaintiff contends that subsequent merits analysis in this case will show that the donning and doffing of sanitary clothing in a food manufacturing or production plant is integral and indispensable to the principal duties of production employees. *See generally Helmert v. Butterball*, 805 F. Supp. 2d 655, 661-62 (E.D. Ark. 2011) ("No reasonable jury could find that an activity essential to prevent food contamination in a poultry processing plant primarily benefits the employees of the plant rather than the employer.").

amount of time for which employees are entitled to compensation. *See Perry*, 78 F.4[th] at

531 (recognizing that courts must consider the aggregate amount of time for which the

employees are legally entitled to compensation in order to prevent employers from

"parcel[ing] work into small groups of tasks that, when viewed separately, always would

be considered *de minimis*."). Here, plaintiff relies on the affidavit of Robert Moulder, Ph.D,

who has summarized defendant's wage and hour data, to support her claim that the

average uncompensated time of plaintiff and other employees was not *de minimis*. (Dkt.

No. 23-1). Dr. Moulder determined that 93% of the timekeeping records reflected an

average reduction of 9 minutes of employee time per day.[4] (*Id.*).

Thus, the Court finds that plaintiff has made the requisite showing of a factual

nexus between the circumstances of her claims and the circumstances of the putative

collective. Accordingly, the Court conditionally certifies this case as an FLSA collective

action on behalf of plaintiff and others similarly situated. Plaintiff's request for defendant

to provide the requested contact information for potential opt-in plaintiffs is granted. The

information must be provided by defendants promptly and in a reasonably useable

electronic form.

The Court directs that the parties shall meet and confer regarding the contents of

the proposed notice and consent form.[5] The parties shall jointly submit a proposed notice

---

[4] Dr. Moulder's report and plaintiff's reply memorandum explain how this data was compiled. Defendants utilized a "Kronos timeclock system" which employees activate using their RFID badges and which automatically records the activation times of the RFID badges. (Dkt. No. 23, pgs. 11-12). Plaintiff states that despite having the actual punch-in time of each employee from the electronic timeclock system, defendants calculated time records and wage payment from the start of each employee's scheduled shift time. Plaintiff submits that the uncompensated time spent donning sanitary uniforms takes place between the punch-in time and the shift start time.

[5] Mostly notably, the parties shall attempt to reach agreement on the period of time for which notice should be sent.

and consent form to the Court for approval within thirty (30) days of the entry of this order. If the parties are unable to agree upon proposed notice and consent forms, they shall each submit to the Court a proposed version with a brief explanation of their respective positions.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for conditional certification of an FLSA collective action and court-supervised notice to potential opt-in plaintiffs is granted. (Dkt. No. 13).

**SO ORDERED.**

Dated:    March *12*, 2025
          Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge